STATE ex rel. ROBERT E. SEE, Relator v. JAMES R. APPLING et al., Respondents.

**St. Louis Court of Appeals, June 8, 1915.**

1. MANDAMUS: Right to Writ. In order for mandamus to be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of the respondent to perform the act required.

2. MUNICIPAL CORPORATIONS: Employment and Compensation of Officers: Right to Dispense with Special Services. Where the salary of a city marshal was fixed by ordinance, the fact that his predecessors were paid, and that, during a certain period, he was paid, additional compensation for acting as night watchman, pursuant to a resolution adopted by the board of aldermen, did not entitle him to receive such additional compensation after his services as night watchman were dispensed with by the board, since it was within the power of the board to dispense with such services, after which he was entitled only to the salary fixed by ordinance.

Mandamus. Original Proceeding.

ALTERNATIVE WRIT QUASHED.

*Ball & Ball* for relator.

*W. C. Hughes* for respondents.

NORTONI, J.—This is a mandamus instituted in this court. Relator is the marshal of Montgomery City, Missouri, while the respondents are the mayor and the several members of the board of aldermen also the clerk of the same city.

It is sought to compel the city authorities to issue a warrant of $40 in payment of relator's salary as city marshal for the month of March, 1915. The alternative writ was issued of course, in the view that the ordinance of the city fixed relator's salary at such amount. But the fact now appears otherwise.

Relator was elected marshal of Montgomery City on the first Tuesday in April, 1914, and entered upon the performance of his duties immediately thereafter. It appears that the different persons holding the office of city marshal for several years theretofore had been receiving a salary of $40 per month in compensation for the services rendered both as marshal and night watchman, and relator was paid the same amount for such services during the period including the months of April, 1914 to February, 1915; but at its meeting in March, 1915, the board of aldermen rejected his claim for $40 salary and allowed $10 only on that account. Because of this plaintiff sued out the alternative writ of mandamus here, as though the ordinance of the city fixed his salary as marshal at $40 per month and the officers were remiss in performing their duty in rejecting his claim for such salary during the month of March, 1915.

The ordinance pertaining to the salary of city marshal reveals a blank between the words "the sum of" and "dollars", but as those holding the office of city marshal had theretofore received $40 per month, and he, too, likewise for a time, relator insisted the same amount was due him.

By the return to the alternative writ, the respondents raise an issue of fact touching the matter of the salary of the marshal as fixed by ordinance, and assert that such salary was fixed therein at $10 per month, and never at $40 per month, as insisted by relator. On this issue of fact being raised, the court appointed H. W. Johnson, Esq., to hear the evidence and report his finding of fact concerning the same. The ordinance, as it appears on the records of the city, is as follows:

"The City Marshal shall receive in addition to the fees allowed by ordinance as compensation for his services the sum of —— dollars per month, payable monthly."

But the report of the commissioner abounds with evidence tending to prove that it formerly, as originally enacted, and at least as late as October, 1914, contained the word "ten" where the blank appears, so as to fix the marshal's salary at $10 per month. The commissioner finds the fact to be that the ordinance appears on the records of the city as above copied and, then his finding recites as follows:

"At the time of the adoption of the ordinance fixing the marshal's salary in 1904, and up to October 1914, the evidence shows that the word ten appeared, where the blank now appears in the Ordinance as introduced."

Among other things, the commissioner finds from the evidence also that it appears to have been the custom of the board of aldermen of Montgomery City, for the mayor and board to designate the marshal as night watchman also, and allow him $30 per month for his services as such night watchman, in addition to the $10 per month salary received as marshal under the ordinance, but there is no ordinance of the city providing for the appointment of a night watchman, and it was merely a custom which obtained for many years before relator was elected marshal, and continued for

a time thereafter—that is, until the month of March, 1915.

The commissioner finds that the relator, after being elected marshal, on Tuesday, April 7, 1914, immediately qualified and entered upon the duties of his office, and he finds, too, that, on the 14th day of April, 1914, relator was appointed by the mayor and board of aldermen as night watchmen for ninety days. The commissioner then finds: "Thereafter relator performed the duties of marshal and night watchman, until the 3rd day of February, 1915, when the board of aldermen, by motion entered of record, dispensed with the further services of the night watchman." The commissioner finds, also, that since the date last mentioned, the board of aldermen has refused to audit the marshal's account for more than $10 per month as salary, and the marshal has refused to accept the same.

The evidence which is incorporated in the commissioner's report is abundant to sustain the finding so made, and, indeed, on the crucial question in the case —that is, as to whether or not the ordinance stipulated the salary of the marshal at $10 per month at the time —it is overwhelming. The city record book containing the official record of the original ordinance has been produced before us by counsel and it reveals an erasure of the missing word. However, there is no evidence tending to show that relator was in anywise connected with or knew of such erasure, and, indeed, the commissioner expressly so finds this fact in his favor. But though such be true, it is clear the alternative writ should be quashed and the respondents discharged, for that the relator has failed to show a clear legal right to the salary claimed.

In order for the writ of mandamus to be available, it is essential that the relator have a clear legal right to the thing demanded, and it must be the imperative duty of the respondents to perform the act required. [19 Am. & Eng. Ency. Law (2 Ed.), 725;

State ex rel. Doud v. Lesueur, 136 Mo. 452, 38 S. W. 325.]

According to the overwhelming evidence in the record, and the fact as found by the commissioner, the ordinance, as enacted in March, 1904, provided a salary of $10 per month for the marshal, and even as late as October, 1914, the word "ten" still continued where the blank space now appears. This being true, the marshal's salary is fixed thereby at $10 per month, and the mere fact that the city paid other marshals $40 per month, or that it paid relator $40 per month for a time, is immaterial, in so far as his right to a writ of mandamus is concerned. The finding is, that relator was appointed night watchman by a mere resolution of the board, and continued for several months performing such duties in addition to marchal "until the 3rd day of February, 1915, when the board of aldermen, by motion entered of record, dispensed with the further services of the night watchman." The evidence is, that though he was paid $40 a month during the time, such payment was in compensation for all the services rendered by him—that is, as marshal and also as night watchman. The fact that the board of aldermen allowed him additional compensation for acting as night watchman, or, for that matter, the fact that the board may have allowed him other and additional compensation than that stipulated in the ordinance for his services as marshal, created no enforcible right in his favor against the city to have such compensation continued. The ordinance stipulated the salary of the marshal, and that alone controls with respect to such office. It was entirely competent for the city authorities to discontinue relator's employment as night watchman, and the ordinance fixing the salary of marshal at $10 per month, in addition to his fees allowed by law, controls, with respect of that matter. [See Hisey v. City of Charleston, 62 Mo. App. 381.]

191M.A.38

Although it be true that plaintiff became a candidate for, and was elected to, the office of marshal expecting to receive a salary of $40 per month as his predecessors had, the city was under no obligation to employ him as night watchman and continue such employment throughout his term as marshal in addition, as it did others, and pay him other salary on account of that service, for the ordinance fixed the salary of marshal at $10 per month at the time. The matter of employing relator as night watchman, as the authorities appear to have done by resolution on April 14, 1914, for a period of ninety days, was wholly discretionary with the board of aldermen and it was likewise in its discretion to dispense with such services at the end of that period or as it subsequently did on February 3, 1915. It is clear relator had no vested right with respect of this matter.

The alternative writ should be quashed and respondents discharged. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.